UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN ROE,<br><br>Plaintiff,<br><br>v.<br><br>CORECIVIC, INC., formerly known as Correction Corporation of America (CCA); DOES 1 through 30, inclusive,<br><br>Defendants. | Case No.:  3:25-cv-02471-GPC-DDL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CORECIVIC'S MOTION TO DISMISS**<br><br>**[ECF No. 8]** |

In this case, Plaintiff alleges that a correctional officer at the Otay Mesa Detention Center sexually assaulted him while he was detained pending his immigration proceedings. ECF No. 1-2, ¶ 26. Currently before the Court is Defendant CoreCivic's motion to dismiss the complaint for failure to state a claim. ECF No. 8. For the reasons outlined below, the Court grants, in part, and denies, in part, Defendant's motion to dismiss.

## BACKGROUND

Plaintiff was detained at the Otay Mesa Detention Center ("OMDC") pending his

immigration proceedings from May 2023 through February 2024. ECF No. 1-2, ¶ 26.[1] At all times relevant to Plaintiff's complaint, Defendant CoreCivic owned and operated OMDC pursuant to a contract with U.S. Immigration and Customs Enforcement ("ICE"). *Id.* ¶ 12; ECF No. 8, at 8.

Plaintiff alleges that on August 18, 2023, an unidentified officer at OMDC—Defendant Doe 1—sexually assaulted Plaintiff. ECF No. 1, ¶ 26. Specifically, Doe 1 instructed Plaintiff to strip his clothes for an unwarranted strip search in a room without security cameras. *Id.* ¶¶ 28-29. Despite Plaintiff's refusal, Doe 1 continued to "threaten" Plaintiff and "force" Plaintiff to remove his clothes, such that Plaintiff feared punishment if he did not comply with Doe 1's commands. *Id.* ¶ 30. When Plaintiff struggled to remove his shirt due to a shoulder injury, *id.* ¶ 32, Doe 1 stated "You don't have to remove your shirt. If you don't say anything, I won't say anything." *Id.* ¶ 33. Doe 1 then ordered Plaintiff to remove his boxers. *Id.* ¶ 34. When Plaintiff did so, Doe 1 made comments about Plaintiff's penis. *Id.* Doe 1 then proceeded to rub his face along Plaintiff's penis while Plaintiff tried to pull his boxers back on. *Id.* ¶ 36. As Plaintiff tried to leave the room, Doe 1 grabbed Plaintiff and put his hand down Plaintiff's pants. *Id.* ¶ 38. Doe 1 then forcibly performed oral sex on Plaintiff. *Id.* After the assault, Doe 1 threatened Plaintiff and ordered him not to say or do anything in retaliation. *Id.* Hours later, Plaintiff reported the rape to the sheriffs who performed a DNA test of the saliva on Plaintiff's penis. *Id.* ¶ 40. In November 2024, Plaintiff received confirmation that the DNA test showed that the saliva matched Defendant Doe 1's DNA. *Id.* ¶ 41. Plaintiff alleges that Defendant CoreCivic did not discipline Doe 1 after the sexual assault. *Id.* ¶ 45.

---

[1] Because the case is currently before the Court on Defendant CoreCivic's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court accepts all well-pled allegations as true for the purpose of deciding this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

2

Plaintiff remained detained at OMDC for approximately six and a half months following his assault. *Id.* ¶ 42. As a result of the assault, Plaintiff suffered from PTSD and severe emotional distress, leading to two suicide attempts inside his cell. *Id.* Plaintiff continues to experience severe emotional distress stemming from the sexual assault. *Id.*

On August 18, 2025, Plaintiff filed his complaint in California Superior Court in San Diego County. ECF No. 1-2, at 2. Plaintiff's complaint alleges the following claims against CoreCivic and Does 1 through 30, and all claims are asserted as to all Defendants: (1) negligent supervision of detainees in Defendants' care; (2) negligent hiring, supervision, and retention; (3) negligence; (4) negligence per se; (5) sexual battery under Cal. Civ. Code § 1708.5; (6) battery; (7) sexual harassment under Cal. Civ. Code § 51.9; (8) violation of the Tom Bane Act, Cal. Civ. Code § 52.1; (9) gender violence under Cal. Civ. Code § 52.4; and (10) intentional infliction of emotional distress.

On September 18, 2025, Defendant CoreCivic removed Plaintiff's complaint to this Court based on the federal officer removal statute, 8 U.S.C. § 1442(a)(1). On October 31, 2025, CoreCivic moved to dismiss Plaintiff's claim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).[2] ECF No. 8. Plaintiff responded in opposition to Defendant's motion on December 4, 2025, ECF No. 10, to which Defendant replied on January 2, 2026, ECF No. 11.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal under Rule 12(b)(6) is appropriate where the complaint fails to state or allege sufficient facts to support a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

---

[2] "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When reviewing a Rule 12(b)(6) motion, the court accepts all facts alleged in the complaint as true and draws all reasonable inferences in favor of the non-moving party. *Chubb Custom Inc. v. Space Sys./Loral, Inc.*, 710 F.3d 946, 956 (9th Cir. 2013).

Where a motion to dismiss is granted, "leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'" *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).

## JURIDSIDCTION

Defendant CoreCivic removed this case to federal court pursuant to 28 U.S.C. § 1442(a)(1), the federal officer removal statute. Though Plaintiff did not oppose removal, courts "must assure ourselves of our own jurisdiction." *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017).

### I.    Federal Officer Removal Statute

As explained by the Ninth Circuit:

> [T]he federal officer removal statute authorizes removal of a civil action brought against any person "acting under" an officer of the United States "for or relating to any act under color of such office." To invoke the statute, [Defendant] must show that (1) it is a "person" within the meaning of the statute, (2) a causal nexus exists between plaintiffs' claims and the actions [Defendant] took pursuant to a federal officer's direction, and

4

3:25-cv-02471-GPC-DDL

(3) it has a "colorable" federal defense to plaintiffs' claims. *Leite v. Crane Co.*, 749 F.3d 1117, 1120 (9th Cir. 2014) (citations omitted). Courts interpret § 1442 "broadly in favor of removal." *See Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006).

First, CoreCivic is a "person" within the meaning of § 1442(a)(1). *See Goncalves*, 865 F.3d at 1244. Thus, the Court turns to the other requirements of § 1442(a)(1).

**A. Causal Nexus to Actions Performed Under Federal Officers**

Next, the causal nexus inquiry involves determining both (1) whether the private entity was "acting under" a federal officer and (2) whether the actions taken "under" the federal officer are casually connected to the dispute at issue. *Gonclaves*, 865 F.3d at 1244.

A private entity "act[s] under" a federal officer when it "help[s] carry out[] the duties or tasks of the federal superior." *Gonclaves*, 865 F.3d, at 1245 (quoting *Watson v. Phillip Morris Cos.*, 551 U.S. 142, 152 (2007)). Such a relationship generally involves "subjection, guidance, or control." *Id.* (quoting *Watson*, 551 U.S. at 151-153).

In its notice of removal, CoreCivic alleges that it operates Otay Mesa Detention Center ("OMDC") pursuant to a contract with U.S. Immigration and Customs Enforcement ("ICE"). ECF No. 1, ¶ 14. Specifically, CoreCivic asserts that, per the contract, (1) ICE approves all plans, policies, and procedures in effect at OMDC and that CoreCivic may not modify those policies without ICE approval, *id.* at ¶ 21; (2) ICE has full control over granting or terminating CoreCivic employees' access to OMDC, *id.* ¶ 22; and (3) CoreCivic employees at OMDC must adhere to ICE policies, procedures, and detention standards. *Id.* at ¶ 26. None of these factual allegations are contested by Plaintiff.

Such a level of control is sufficient to demonstrate that CoreCivic is "acting under" a federal officer in its operation of OMDC. *See, e.g., DeFiore v. SOC LLC*, 85 F.4th 546, 556 (9th Cir. 2023) (finding that contractor was "acting under" federal officer when contractor was subject to U.S. military command in the performance of their duties); *see also Gonclaves*, 865 F.3d, at 1245-47.

The "causal nexus" has also been satisfied. "The 'hurdle erected by [the causal-connection] requirement is quite low.'" *DeFiore*, 85 F.4th, at 557 (quoting *Gonclaves*, 865 F.3d, at 1244) (alteration in original). CoreCivic "only need[s] to show that the actions [it] took which gave rise to [Plaintiff's] claims resulted from [its] work for [ICE]." *Id.* CoreCivic has adequately shown that the actions giving rise to Plaintiff's claims—namely, the operation of OMDC—resulted from its work for ICE.

**B. Colorable Federal Defense**

Under this element of § 1442(a)(1), "the court's inquiry is only whether the defendant advanced a colorable federal defense, 'not whether [the] defense will be successful.'" *DeFiore*, 85 F.4th, at 558 (quoting *Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1429 (11th Cir. 1996)). Additionally, a defendant does not need to assert a colorable federal defense for every claim; one defense against one claim is sufficient. *Id.*

CoreCivic asserts two federal defenses: compliance with federal rules and regulations, and derivative sovereign immunity. The Court need only consider compliance, where Defendant argues the federal regulations incorporated into its contract with ICE, *see* ECF No. 1, ¶ 17, provide a colorable defense, *id.* ¶ 47.

In response to Plaintiff's allegations that CoreCivic was negligent in its operation of OMDC, Defendant argues that it did what was required of it by federal law in compliance with the PREA and the standards set forth in its contract with ICE, which included adherence to federal statutes and regulations. ECF No. 1, ¶¶ 47, 16-17.

"When a plaintiff's alleged injuries arise from conduct of the defendant acting under federal law and the court is charged with 'the proper interpretation of . . . the statute' to 'determin[e] . . . the scope of [the defendant's] duties,' then a 'colorable federal defense' exists." *DeFiore*, 85 F.4th at 558 (quoting *Mesa v. California*, 489 U.S. 121, 129-30 (1989)). *See also Magnin v. Teledyne Cont'l Motors*, 91 F.3d 1424, 1428 (11th Cir. 1996) ("At least part of Smith's defense is that he acted within the scope of his federal duties, that what he did was required of him by federal law, and that he did all federal law

6

required. That defense raises a federal question, which justifies removal.").

CoreCivic's defense need only be "colorable," such that it is not "immaterial," "made solely for the purpose of obtaining jurisdiction," "wholly insubstantial," or "frivolous." *See DeFiore*, 85 F.4th, at 560 (quoting *Bell v. Hood*, 327 U.S. 678, 682-83, (1946)). CoreCivic has cleared this threshold, and its defense of compliance with federal rules and regulations constitutes a colorable federal defense.

CoreCivic has satisfied the requirements of the federal officer removal statute, § 1442(a)(1). Thus, removal to this Court was proper, and the Court may exercise subject matter jurisdiction over the controversy.

## DISCUSSION

CoreCivic points to several alleged flaws in Plaintiff's complaint which it argues merit dismissal. The Court will address each in turn.

**I.      The Complaint Sufficiently Places Defendant CoreCivic on Notice of the Claims Against It.**

Defendant begins by arguing that Plaintiff's complaint fails to satisfy the notice requirements of Rule 8(a)(2) by impermissibly "lumping" all Defendants together. ECF No. 8, at 12.

Rule 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Such a statement must give "notice of the claim such that the opposing party may defend himself or herself effectively." *Starr v. Baca*, 652 F.3d 1202, 1212 (9th Cir. 2011). To satisfy the notice requirements of Rule 8, a "[p]laintiff must allege the basis of his claim against each defendant," rather than "lump[ing]" all defendants "together in a single, broad allegation." *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988).

Defendant argues that Plaintiff's complaint fails to put each Defendant on notice as to what is alleged against them and fails to specify which acts were allegedly performed by which Defendant. ECF No. 8, at 11. Plaintiff counters that his pleading adequately

provides "notice to each Defendant as to the nature of the claim against it and the conduct at issue." ECF No. 10, at 12.

Defendant correctly notes that Plaintiff's complaint would benefit from greater specificity as to which specific actions are attributed to which specific Defendants. *See, e.g.*, ECF No. 1-2, ¶ 58 ("Defendants breached their duty of care to inmates and detainees."); *id.* ¶ 73 ("Defendants did not take action . . . to reprimand or correct actions based on reports of [abuse]."); *id.* ¶ 127 ("Defendants subjected Plaintiff to sexual acts."). However, Plaintiff's allegations are not so vague as to cause CoreCivic impermissible "confusion" as to which claims apply to it. *See Gen-Probe, Inc. v. Amoco Corp.*, 926 F. Supp. 948, 961 (S.D. Cal. 1996). This is because, as Plaintiff notes, "Plaintiff named only CoreCivic and Doe defendants in his complaint," ECF No. 10, at 12, where all Doe Defendants are alleged to be "agents, servants, and employees" of CoreCivic acting "within the full course and scope" of their employment. ECF No. 1-2, ¶ 14. Thus, Plaintiff's complaint raises claims only against CoreCivic and CoreCivic's own employees allegedly acting within the scope of their employment such that their actions are attributable to CoreCivic, *see* ECF No. 1-2, ¶ 51.

Accordingly, to the extent that CoreCivic attempts to argue that it was not put on notice as to which claims Plaintiff has levied against it, this argument fails. The complaint makes clear that each allegation in the complaint applies to Defendant CoreCivic. Thus, the Court declines to dismiss Plaintiff's claims against CoreCivic on the grounds that they fail to meet the notice requirements of Rule 8(a)(2).

## II.   Dismissal of the Doe Defendants is Premature.

The Ninth Circuit has acknowledged that "situations arise . . . where the identity of alleged defendants will not be known prior to the filing of a complaint." *See Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). It has held that "[i]n such circumstances, the plaintiff should be given an opportunity through discovery to identify the unknown

3:25-cv-02471-GPC-DDL

defendants, unless it is clear that discovery would not uncover the identities, or that the complaint would be dismissed on other grounds." *Id.*

Here, Plaintiff has alleged facts indicating that other Doe Defendants engaged in conduct for which they may be liable, including negligently supervising Doe 1, ECF No. 1-2, ¶ 39, negligently setting up cameras such that certain rooms lacked any surveillance, *id.* ¶ 28, or negligently failing to respond to reports of sexual violence, *id.* ¶ 44. However, Plaintiff has not yet been given an opportunity to identify those parties.

Accordingly, CoreCivic's argument for dismissal of the Doe Defendants is premature. *Sanchez v. CoreCivic, Inc.*, No. 3:24-CV-1199-L-VET, 2025 WL 1160008, at *2 (S.D. Cal. Apr. 21, 2025). Indeed, "[u]pon completion of the pleading stage, the parties will receive a deadline to join other parties. *See* Civ. L. R. 16.1(d)(2). Until then, Plaintiff may file a motion to substitute Doe Defendants. Accordingly, to the extent Defendants wish to dismiss any Doe Defendants, their motion is denied as premature." *Id.*

### III. The Court Declines to Dismiss Claims as Duplicative.

Defendant argues at great length that Plaintiff's various theories of negligence—Counts I through IV—are duplicative of one another and should therefore be dismissed. *See* ECF No. 8, at 13 ("Counts 1 (Negligent Supervision) and 3 (Negligence) are Duplicative of Count 2 (Negligent Hiring, Supervision and Retention) and Should be Dismissed."); ECF No. 11, at 7 ("Accordingly, Plaintiff's negligent supervision claim remains duplicative of his negligent hiring, supervision, and retention claim and should be dismissed."). Plaintiff counters that each of the negligence claims relies on a different theory of liability, including alleged breaches of CoreCivic's (1) duty to supervise detainees in its care, (2) duty to supervise its employees, and (3) duty to act as a reasonable detention facility so as to avoid causing harm to Plaintiff. ECF No. 10, at 14.

The Court agrees that Plaintiffs' negligence claims are not duplicative because they rely on different legal theories. However, even if the causes of action "were in fact duplicative, a claim that is duplicative or superfluous of other claims 'is not grounds for

9

dismissal.'" *Desoucy v. Cnty. of San Bernardino*, No. EDCV 23-1287-JGB-MAAX, 2025 WL 1111496, at *3 (C.D. Cal. Mar. 13, 2025) (quoting *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762-63 (9th Cir. 2015)). *See also* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones."). *But see Segura v. City of La Mesa*, 647 F. Supp. 3d 926, 940 (S.D. Cal. 2022) ("Courts may dismiss claims that essentially repeat another claim in the same complaint."). Thus, while the Court will assess the merits of each of Plaintiff's negligence claims, it will not dismiss any claim on the grounds that it is duplicative of another.

## IV.    Plaintiff Does Not Impermissibly Bring Claims Under PREA.

Defendant next asserts that Plaintiff's negligence claims impermissibly "attempt to bring a private right of action under the Prison Rape Elimination Act ("PREA")." ECF No. 8, at 12. Defendant is correct that "PREA [does] not create a private right of action for inmates to sue prison officials for noncompliance." *Rutledge v. Lassen Cnty. Jail*, No. 2:18-CV-1600, 2021 WL 1062560, at *2 (E.D. Cal. Feb. 12, 2021). However, Plaintiff does not attempt to sue Defendant for violating PREA. Rather, Plaintiff is suing Defendant for negligence and utilizing PREA guidelines to support his theory of negligence per se.

"[I]t is the tort of negligence, and not the violation of [a] statute itself, which entitles a plaintiff to recover civil damages." *Tinoco v. San Diego Gas & Elec. Co.*, No. 17-CV-2433-BAS-JLB, 2018, WL 4562479 at *1 (S.D. Cal. 2018) (quoting *Sierra–Bay Fed. Land Bank Ass'n. v. Superior Court*, 227 Cal. App. 3d 318, 333 (1991)). In referencing PREA, "[P]laintiff is not attempting to pursue a private cause of action for violation of the statute; rather, he is pursuing a negligence action and is relying upon the violation of a statute, ordinance, or regulation to establish part of that cause of action." *Id.* Thus, Plaintiff's references to PREA reflect a theory of negligence per se, not an attempt to bring a claim where there is no private right of action. *See, e.g., Elsner v. Uveges*, 34 Cal. 4th 915, 929 n.8 (2004) (negligence per se refers to the concept of borrowing statutes "for one of two

10

purposes: (1) to establish a duty of care, or (2) to establish a standard of care" (citations omitted)). Accordingly, Plaintiff's citations to PREA do not create a defect in his negligence pleadings and the Court will not dismiss any of Plaintiff's negligence claims on the grounds that PREA does not create a private right of action. *See*, *e.g.*, *Peterson v. Martinez*, No. 3:19-CV-01447-WHO, 2020 WL 999832, at *7 (N.D. Cal. Mar. 2, 2020).

## V.    Count I - Negligent Supervision of Detainees

As an initial matter, CoreCivic argues that Plaintiff "cannot bring a direct negligence claim against CoreCivic." ECF No. 8, at 17-18. This is not the case. While Defendant correctly notes that Plaintiff is unable to bring a *Bivens* action against Defendant CoreCivic as a private contractor, *id.* at 17 (citing *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 63 (2001)), this does not preclude Plaintiff from bringing a state law claim against CoreCivic for its own negligence or that of its employees working within the scope of their employment. *See*, *e.g.*, *Est. of Escobar v. United States*, No. 20-CV-2454-L-KSC, 2022 WL 3209380, at *6 (S.D. Cal. Aug. 8, 2022) (denying motion to dismiss wherein plaintiff brought a negligence claim—including theories of negligent hiring and negligent supervision—against defendant CoreCivic). Thus, the Court will assess Plaintiff's direct negligence claims raised against CoreCivic.

Plaintiff's first theory of negligence asserts that CoreCivic was negligent in its supervision of Plaintiff as a detainee in CoreCivic's care.[3] ECF No. 1-2, ¶¶ 57-59. Specifically, Plaintiff alleges that CoreCivic had a "duty to use reasonable care in the

---

[3] Plaintiff has titled this claim "negligent supervision," which, as Defendant notes, typically refers to a cause of action against an employer for inadequate supervision of its agents or employees. However, the complaint makes clear that the cause of action refers to CoreCivic's supervision of those in its custody and care. *See* ECF No. 1-2, ¶ 55 ("Defendants had a duty to properly supervise its employee and all inmates and detainees in order to lawfully maintain the health and safety of detainees."); *id.* ¶ 57 ("CoreCivic had a duty to use reasonable care in the supervision of its inmates.").

supervision of its inmates," and that "CoreCivic failed to properly supervise its inmates." *Id.* ¶ 57.

"Under California law, to state a claim of negligence, a plaintiff must allege: (1) the existence of a legal duty of care, (2) breach of that duty, (3) proximate cause, and (4) injury." *DD v. United States*, No. EDCV 22-61-KK-JCX, 2024 WL 5466463, at *6 (C.D. Cal. Nov. 19, 2024) (citing *Castellon v. U.S. Bancorp*, 220 Cal. App. 4th 994, 997 (2013)).

The existence of a duty of care is a question of law to be determined by the court. *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243, 1254 (E.D. Cal. 2010) (citing *Ballard v. Uribe,* 41 Cal. 3d 564, 572 n.6 (1986)). Whether a duty exists may depend on the relationship between a plaintiff and defendant. "There is a well-established special relationship between jailers and prisoners." *Lum*, 756 F. Supp. 2d at 1254. As a result, "[o]fficers and jailers have a duty to act with reasonable care toward those in their custody." *Id.* at 1255.

Here, Plaintiff alleged that he was a detainee at OMDC when the events giving rise to his claims occurred, ECF No. 1-2, ¶ 1; that Defendant CoreCivic runs OMDC, *id.* ¶ 2; and that all Doe Defendants were CoreCivic employees acting within the scope of their employment, *id.* ¶¶ 13-14. Thus, Plaintiff has adequately alleged a special relationship between himself and Defendants such that Defendants owed Plaintiff a duty of reasonable care, thereby satisfying the first element of negligence.[4]

---

[4] Defendant argues that Plaintiff's claim cannot rely upon a special relationship between Plaintiff and Defendant because "Plaintiff does not allege a special relationship with CoreCivic in any claim other than his now dismissed sexual harassment claim." ECF No. 11, at 5. However, Plaintiff alleges facts indicating that he was in a jailer-detainee relationship with Defendant. As a matter of law, there is a special relationship between jailers and those in their custody. *See Lum*, 756 F. Supp. 2d at 1254. Thus, it is sufficient that Plaintiff pled facts demonstrating the circumstances giving rise to a legal special relationship; his claim is not defunct for omitting the term "special relationship."

12

3:25-cv-02471-GPC-DDL

Plaintiff alleges that CoreCivic breached its duty to act with reasonable care by failing to properly supervise the detainees in its custody such that Plaintiff was "in an improper room for a significant amount of time alone with the subject officer, Doe 1, while the assault occurred." ECF No. 1-2, ¶ 39; *id.* ¶¶ 57-58. Plaintiff has also asserted that such a failure to supervise—which led Plaintiff to be in an improper room for a significant amount of time alone with Doe 1—caused Plaintiff to be assaulted by Doe 1. *Id.* ¶ 58. As a result of the sexual assault, Plaintiff alleges that he has suffered emotional, physical, medical and economic harms and losses. *Id.* ¶ 60.

Taken as true, these allegations are sufficient to survive a motion to dismiss. *See, e.g.*, *Snyder v. Stanislaus Cnty.*, No. 1-19-CV-00679-DAD-EPG, 2021 WL 2210729, at *4 (E.D. Cal. June 1, 2021). Plaintiff has adequately alleged duty, breach, causation, and damages. Defendant's motion to dismiss is therefore denied as to Plaintiff's negligence claim based on Defendant CoreCivic's alleged inadequate supervision of detainees in its custody.

## VI.    Count II - Negligent Hiring, Supervision, Training, and Retention of Employees

Plaintiff next alleges that Defendant CoreCivic failed to exercise reasonable care in its hiring, supervision, training, and retention of its employees. The Court addresses these claims in turn.

### A. Hiring

An employer may be liable for the "employer's negligence in hiring . . . an employee who is incompetent or unfit." *Delfino v. Agilent Techs., Inc.*, 145 Cal. App. 4th 790, 815 (2006) (quoting *Roman Catholic Bishop v. Superior Court*, 42 Cal. App. 4th 1556, 1564 (1996)). However, such liability will only be imposed upon the employer if it "knew or should have known that hiring the employee created a particular risk or hazard and that particular harm materializes." *Id.* (quoting *Doe v. Capital Cities*, 50 Cal. App. 4th 1038, 1054 (1996)).

13

Plaintiff's complaint is devoid of any allegations regarding any Doe Defendants' unfitness prior to being hired by Defendant CoreCivic, nor of Defendant CoreCivic's knowledge of any such unfitness. Thus, Plaintiff has failed to allege a negligent hiring claim.

**B. Retention**

Like negligent hiring, "an employer may be liable to a third person for the employer's negligence in . . . retaining an employee who is incompetent or unfit." *Phillips v. TLC Plumbing, Inc.*, 172 Cal. App. 4th 1133, 113 (2009). "To establish liability, a plaintiff must demonstrate the elements of negligence: duty, breach, proximate causation, and damages." *Acevedo v. eXp Realty, LLC*, 713 F. Supp. 3d 740, 803 (C.D. Cal. 2024). "There are "two elements necessary for a duty to arise in negligent hiring and negligent retention cases—the existence of an employment relationship and foreseeability of the injury." *Phillips*, 172 Cal. App. at 1142. Thus, liability for negligent retention "occurs when the employer knew or should have known that . . . retaining the employee created a particular risk or hazard and that particular harm materializes." *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009) (citing *Doe v. Capital Cities,* 50 Cal. App. 4th 1038, 1054 (1996)).

Here, Plaintiff alleges (1) that Defendant CoreCivic had notice of patterns of abuse at OMDC, *see* ECF No 1-2, at ¶¶ 24-27, 44; (2) that "upon information and belief, this was not the first time Doe 1 physically harmed an inmate,"[5] ECF No. 1-2, ¶ 26; (3) that CoreCivic had "notice of [Doe 1's] harmful behavior prior to . . . the subject sexual assault

---

[5] "A plaintiff may plead facts on information and belief 'where the belief is based on factual information that makes the inference of culpability plausible.'" *Waln v. Dysart Sch. Dist.*, 54 F.4th 1152, 1161 (9th Cir. 2022) (quoting *Soo Park v. Thompson*, 851 F.3d 910, 928 (9th Cir. 2017)). Here, the standard is met because Plaintiff bases his belief on his own time at OMDC and interactions with Doe 1 as well as published, public reports regarding pervasive abuse at OMDC.

and battery," *id.* ¶ 45; and (4) that CoreCivic "did not take action . . . to respond to, reprimand, or correct actions based on reports of Doe 1, and other employees' harm of inmates," *id.* ¶ 73. Plaintiff further alleges that these failures resulted in him being sexually assaulted by Doe 1, *id.* ¶ 74, and that such assault led to various physical and emotional harms, *id.* ¶ 52.

Plaintiff has adequately alleged that Defendant CoreCivic knew of Doe 1's previous harmful conduct and the risk he posed to detainees, failed to respond to such a risk, and that the risk materialized when Plaintiff was "raped by the subject officer Doe 1 while in their care and custody of Defendants at Otay Mesa Detention Center." *Id.* ¶ 74. Accordingly, Plaintiff has sufficiently stated a claim for negligent retention.

**C. Supervision**

To establish negligent supervision, a plaintiff must allege facts showing "that a person in a supervisorial position over the actor had prior knowledge of the actor's propensity to do the bad act." *Est. of Cruz-Sanchez by & through Rivera v. United States*, No. 17-CV-569-AJB-NLS, 2019 WL 4508571, at *6 (S.D. Cal. Sept. 17, 2019) (quoting *Z.V. v. Cnty. of Riverside*, 238 Cal. App. 4th 889, 902 (2015)).  In other words, a plaintiff must demonstrate "knowledge by the principal that the agent or servant was a person who could not be trusted to act properly without being supervised." *Garcia ex rel. Marin*, 627 F. Supp. 2d at 1207 (quoting *Juarez v. Boy Scouts of Am.,* 81 Cal. App. 4th 377, 395 (2000)).

As referenced above, Plaintiff has alleged that (1) that "upon information and belief, this was not the first time Doe 1 physically harmed an inmate," ECF No. 1-2, ¶ 26; (2) that CoreCivic had "notice of [Doe 1's] harmful behavior prior to . . . the subject sexual assault and battery," *id.* ¶ 45; and (3) that CoreCivic "did not take action . . . to respond to, reprimand, or correct actions based on reports of Doe 1, and other employees' harm of inmates," *id.* ¶ 73. Thus, Plaintiff alleges that "CoreCivic failed to adequately supervise its employees . . . and take reasonable steps to prevent the foreseeable and known harms

3:25-cv-02471-GPC-DDL

caused to Plaintiff." *Id.* ¶ 47.

Plaintiff has alleged facts showing that CoreCivic knew, based on previous reports of misconduct, that Doe 1 could not be trusted to act properly without being supervised, yet failed to supervise Doe 1 such that he was able to isolate and sexually assault Plaintiff. Plaintiff has, therefore, adequately stated a claim for negligent supervision.

**D. Training**

"Under California law, a plaintiff alleging negligent training . . . must show 'the employer negligently trained the employee as to the performance of the employee's job duties and as a result of such negligent instruction, the employee while carrying out his job duties caused injury or damage to the plaintiff.'" *Morales-Alfaro v. CoreCivic, Inc.*, No. 20-CV-82-LAB-BGS, 2024 WL 1078233, at *8 (S.D. Cal. Mar. 12, 2024), *aff'd sub nom. Morales-Alfaro v. United States*, No. 23-55200, 2025 WL 1564352 (9th Cir. June 3, 2025) (quoting *Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1208 (E.D. Cal. 2009)).

Plaintiff has alleged that CoreCivic did not train employees regarding (1) a "zero-tolerance policy for sexual abuse and assault," (2) "how to avoid inappropriate relationships with inmates." or (3) "reporting, detection, and response[s]" to sexual assault. ECF No. 1-2, ¶ 70; *see also id.* ¶ 47 ("CoreCivic failed to adopt, implement, and enforce necessary trainings to prevent sexual abuse by officers at its facilities."); *id.* ¶ 72 ("Defendants . . . failed to . . . implement training . . . regarding supervision of their employees to prevent employees from engaging in unlawful contact with detainees."). Plaintiff further alleges that, as a result of that inadequate training, Plaintiff was "alone in a room that he should not have been in with an officer that should not have been doing what he was doing at the time." *Id.* ¶ 74.

Plaintiff's failure to train allegations are bolstered by his allegations that "similar incidents had occurred before this incident," *id.* ¶ 44, and that "Defendants knew that others had come forward about being sexually abused at the subject facility," *id.* ¶ 44, but

16

did not respond to reports of misconduct, *id.* ¶ 73. Plaintiff alleges facts indicating that such failure to train on preventing, identifying, and responding to sexual assault led to the sexual assault at issue here. *Id.* ¶ 74.

Given these allegations, Plaintiff has sufficiently alleged a cause of action for negligent training against Defendant CoreCivic as to the Doe Defendants. *See Garcia ex rel. Marin v. Clovis Unified Sch. Dist.*, 627 F. Supp. 2d 1187, 1193 (E.D. Cal. 2009) (finding plaintiff adequately alleged negligent training cause of action where she alleged that (1) employees were not properly trained on prevention of sexual harassment, (2) employees failed to report incidents per district policy, and (3) employee "leered" at plaintiff).

## VII.   Count III - Negligence

Plaintiff asserts that the negligence claim in his third cause of action "focuses on CoreCivic's duties to act as a reasonable detention facility so as to avoid causing injury and harm to Plaintiff." ECF No. 10, at 14. More specifically, Plaintiff alleges that CoreCivic breached its duty to act with reasonable care toward those in its custody by failing to take "reasonable, available measures to abate the foreseeable risk of sexual abuse" against Plaintiff. ECF No. 1-2, ¶¶ 83-84, 88-89.

Plaintiff has already established that Defendant CoreCivic owed Plaintiff a duty to act with reasonable care by virtue of the special relationship between Plaintiff and Defendant, *see Lum*, 756 F. Supp. 2d at 1254. Plaintiff relies on PREA to demonstrate the standard of care, indicating that CoreCivic—in its exercise of reasonable care towards those in its custody—was expected to implement a "zero-tolerance policy" for sexual abuse and sexual harassment. ECF No. 1-2, ¶ 83.

Plaintiff has alleged sufficient facts that, when considered all together, indicate that CoreCivic failed to implement a zero-tolerance policy for sexual assault. Regarding CoreCivic's knowledge of instances of assault at OMDC, Plaintiff has alleged that (1) the ACLU released a 2021 report compiling years of abuse allegations at OMDC; ECF No. 1-

2, ¶ 24; (2) upon information and belief, similar incidents had happened before, *id.* ¶ 44; (3) Defendants knew that others had come forward about being sexually abused at the facility, *id.*; and (4) CoreCivic had notice of Doe 1's harmful behavior prior to the subject sexual assault, *id.* ¶ 45.

Plaintiff has further alleged that, despite this knowledge, Defendant CoreCivic: (1) utilized a surveillance system such that certain rooms lacked cameras, and the guards were aware of which rooms were unmonitored, *id.* ¶ 28; (2) failed to discipline Doe 1 or other employees when they harmed inmates, *id.* ¶¶ 45, 73; and (3) failed to investigate claims against officers, *id.* ¶ 44, 90. Such behavior indicates that CoreCivic failed to exercise reasonable care towards its detainees by not implementing a zero-tolerance policy on sexual assault and, thereby, "create[ing] an atmosphere and work environment" where abuse flourished. *Id.* ¶ 27.

Given CoreCivic's knowledge of abuses at OMDC, Plaintiff alleges that Defendant CoreCivic "knew or should have known about the foreseeability of the sexual abuse and sexual harassment that Plaintiff was susceptible to." ECF No. 1-2, ¶ 88. But that "[d]espite notice, Defendants, through its employees, did not take reasonable available measures to abate the risk of sexual abuse to Plaintiff in violation of federal regulations, policies and procedures, and their duties," ECF No. 1-2, ¶ 89. Plaintiff has subsequently alleged that such failure to act led to Plaintiffs' injuries. *Id.* ¶ 97.

Accordingly, Plaintiff has sufficiently alleged a claim of negligence against CoreCivic as to CoreCivic's failure to respond to sexual assaults at OMDC.

## VIII.  Count V – Negligence Per Se

Plaintiff's next cause of action is for "Negligence Per Se." Here, Plaintiff argues that Defendant CoreCivic was "negligent per se" for violations of PREA and California Penal Code § 289.6, which makes it a crime for staff of a detention facility to engage in sexual activity with adults confined therein. ECF No. 1-2, ¶¶ 102, 107, 120.

Plaintiff cannot bring a claim for negligence per se, as "[n]egligence per se is an

evidentiary doctrine, rather than an independent cause of action.'" *Doe v. Johnson*, No. 2:24-CV-1542, 2024 WL 4437817, at *5 (E.D. Cal. Oct. 7, 2024) (quoting *Jones v. Awad*, 39 Cal. App. 5th 1200, 1210 (2019)). "The doctrine does not provide a private right of action for violation of a statute. Instead, it operates to establish a presumption of negligence for which the statute serves the subsidiary function of providing evidence of an element of a preexisting common law cause of action." *Quiroz v. Seventh Ave. Ctr*., 140 Cal. App. 4th 1256, 1285-86 (2006) (citations omitted).

In his opposition, Plaintiff acknowledges that negligence per se is not an independent cause of action. ECF No. 10, at 20. Thus, Plaintiff relies on *Tinoco v. San Diego Gas & Electric Co.*, 2018 WL 4562479 at *1*, to ask the Court to "deem the negligence and negligence per se claims as a single claim." ECF No. 10, at 21.

This case differs from *Tinoco*, wherein the plaintiffs brought only one cause of action entitled "Negligence & Negligence Per Se." *See* Complaint at 4, *De La Rosa v. San Diego Gas & Electric Co. et al.*, No. 3:18-cv-01389-BAS-JLB, (S.D. Cal. June 22, 2018), Dkt. No. 1. Here, Plaintiff has alleged negligence per se as its own cause of action, and the allegations therein have not been incorporated within his other negligence claims. ECF No. 1-2, at 19. Thus, Plaintiff has attempted to state a claim for negligence per se separate from his general negligence claim. As Plaintiff admits, such a claim is not cognizable, *see, e.g.*, *Johnson*, 2024 WL 4437817, at * 5, and the Court declines to *sua sponte* merge Plaintiff's two independent causes of action.

Plaintiff has been given leave to amend his complaint. Should Plaintiff do so, he is free to allege the facts necessary to pursue negligence per se as a theory of negligence. However, Plaintiff's cause of action for negligence per se is not a cognizable action and must be dismissed with prejudice and without leave to amend. *See Doe v. Johnson*, 2024 WL 4437817, at * 5; *Waldo v. Eli Lilly & Co.*, No. CIV. S-13-0789-LKK, 2013 WL 5554623, at *8 (E.D. Cal. Oct. 8, 2013)).

**IX. Counts V and VI – Sexual Battery and Battery**

Defendant CoreCivic moves to dismiss Plaintiff's sexual battery and battery claims primarily on the grounds that Defendant CoreCivic is not liable for the intentional wrongful conduct of its employee Doe 1. ECF No. 8, at 21.

Under California law, employers are vicariously liable for the torts of their employees when they are committed within the scope of their employment. *Lisa M. v. Henry Mayo Newhall Memorial Hospital*, 12 Cal. 4th 291, 296 (1995). Under this reasoning, even "an employee's willful, malicious and even criminal torts may fall within the scope of his employment for purposes of respondeat superior, even though the employer has not authorized the employee to commit crimes or intentional torts." *Id.* There must only be some "causal nexus between the intentional tort and the employee's work." *Sanchez v. CoreCivic, Inc.*, No. 3:25-CV-1944-JES-BLM, 2025 WL 2962441, at *4 (S.D. Cal. Oct. 20, 2025) (citing *Lisa M.*, 12 Cal. 4th at 297). "[A] sexual tort will not be considered engendered by the employment unless its motivating emotions were fairly attributable to work-related events or conditions." *Lisa M.*, 12 Cal. 4th at 301.

When assessing whether there is a causal nexus between an employee's work and an intentional tort, courts consider whether the intentional tort is foreseeable, meaning that "*in the context of the particular enterprise* an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." *Id.* at 302 (quoting *Rodgers v. Kemper Constr. Co., supra,* 50 Cal. App. 3d 608, 619 (1975)) (emphasis in original). California courts have held that "a police officer's assault was a generally foreseeable consequence of his position," *id.*, stating specifically: "In view of the considerable power and authority that police officers possess, it is neither startling nor unexpected that on occasion an officer will misuse that authority by engaging in assaultive conduct," *Mary M. v. City of Los Angeles*, 54 Cal. 3d 202, 217 (1991). The court's holding "flow[ed] from the unique authority vested in police offers." *Id.* at 218 n.11.

Plaintiff has alleged that Doe 1 was a correctional officer employed by Defendant CoreCivic. ECF No. 1-2, ¶ 13. Plaintiff has further alleged that Doe 1 used his authority as a correctional officer during an inmate count to isolate Plaintiff in a separate room, conduct an unauthorized strip search, and sexually assault Plaintiff. *Id.* ¶¶ 28-29. As a result, Plaintiff alleges that "Doe 1 used his authority as a law enforcement officer of CoreCivic, to rape, sexually assault, and sexually harass Plaintiff." *Id.* ¶ 60. Finally, Plaintiff alleges that "Defendant Doe 1 . . . [was] acting within the course and scope of [his] employment with and under the authority given to [him] by, Defendants, including CoreCivic, when [he] committed the sexual battery described herein." *Id* ¶ 129.

Here, Plaintiff has alleged a situation like the one considered by the Supreme Court of California in *Mary M.*, wherein a police officer "misuse[d] his official authority" by raping a woman whom he had detained. *See Mary M.* 54 Cal. 3d at 221. There, the court found that the officer's employer could be held liable for the officer's conduct. *Id.* This Court reaches the same conclusion.

Defendant argues that the reasoning of *Mary M.* does not apply in this case, as *Mary M.* involved a public employer while Defendant CoreCivic is a private entity. ECF No. 11, at 9. However, the analysis in *Mary M.* still "illuminates general principles of respondeat superior liability that apply in California to public and private employers alike." *Xue Lu, v. Powell*, 621 F.3d 944, 947 (9th Cir. 2010). Further, the Supreme Court of California has applied *Mary M.*'s reasoning when considering whether to hold a private employer vicariously liable for an assault committed by an employee. *See Lisa M.*, 12 Cal. 4th at 517-518 (acknowledging that the facts of *Mary M.* were not on point, but engaging in a similar analysis regarding whether assault was foreseeable given defendant's authority over plaintiff: "While a police officer's assault may be foreseeable from the scope of his unique authority over detainees, we are unable to say the same of an ultrasound technician's assault on a patient.").

Defendant points to cases where courts have declined to extend *Mary M.* or hold

21

3:25-cv-02471-GPC-DDL

employers liable for an employee's sexual assault. However, none of the provided cases occurred in a custodial context where the assailant's official authority so closely resembled that of a police officer. *See*, *e.g.*, *Z.V.*, 238 Cal. App. 4th at 898–903 (social worker and foster child); *John R. v. Oakland Unified Sch. Dist.*, 48 Cal. 3d 438, 452 (1989) (teacher and student). Here, Doe 1—through his employment with CoreCivic at OMDC—was empowered by ICE with responsibilities, powers, and authority closely resembling that of law enforcement officers and was required to adhere to ICE policies and detention standards. ECF No. 1, ¶ 26.

Overall, California courts have clearly prioritized the nature of an employee assailant's role and workplace when determining whether an employer can be held vicariously liable for an employee's intentional tort. Central to that analysis is whether the intentional tort was "an outgrowth of workplace responsibilities [or] conditions," or "arose from an abuse of job-created authority." *Lisa M.*, 12 Cal. 4th at 302, 303 (citing *Mary M.* 54 Cal. 3d at 221). This Court finds that just as "a police officer's assault [is] a generally foreseeable consequence of position," so is a corrections officer's assault of a detainee, regardless of whether the officer works for a public employer or private corrections facility. Thus, Plaintiff has sufficiently alleged vicarious liability as to Defendant CoreCivic for his Sexual Battery and Battery claims. *See Sanchez v. CoreCivic, Inc.*, 2025 WL 1160008, at *5.

Plaintiff has otherwise adequately alleged his claims for battery and sexual battery. "The elements of civil battery are: (1) defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) plaintiff did not consent to the contact; and (3) the harmful or offensive contact caused injury, damage, loss, or harm to plaintiff." *Knapps v. City of Oakland*, 647 F. Supp. 2d 1129, 1166 (N.D. Cal. 2009), *amended in part*, No. C 05-02935 MEJ, 2009 WL 10736653 (N.D. Cal. Sept. 8, 2009) (citing *Piedra v. Dugan*, 123 Cal.App.4th 1483, 1495 (2004)). A person commits sexual battery when he "acts with the intent to cause a harmful or offensive contact with

an intimate part of another, and a sexually offensive contact with that person directly or indirectly results." Cal. Civ. Code § 1708.5(a) (citing one of three instances of sexual battery under California law). *See also Sanchez v. CoreCivic, Inc.*, 2025 WL 1160008, at *3.

Here, Plaintiff has alleged that Doe 1, without consent from Plaintiff, rubbed his face on Plaintiff's penis, ECF No. 1-2, ¶¶ 36-37, 128, shoved his hand down Plaintiff's pants, and forcibly performed oral sex on Plaintiff. *Id.* ¶ 38. Plaintiff has further alleged that, as a result of being raped by Doe 1, Plaintiff "has suffered from intense depression, physical bodily sexual trauma, physiological bodily reactions to triggers, diagnosed PTSD, anxiety," and other ailments. *Id.* ¶ 52. Thus, Plaintiff's allegations sufficiently state a claim for both battery and sexual battery under California law.

### X. Counts VII and IX - Plaintiff's Sexual Harassment and Gender Violence Claims Are Dismissed Without Prejudice.

In his opposition to CoreCivic's motion, Plaintiff agreed to dismiss his sexual harassment and gender violence claims without prejudice. ECF No. 10, at 7 n.1. Thus, the Court grants, without prejudice, Defendant's motion to dismiss as to Plaintiff's seventh and ninth causes of action.

### XI. Count VIII – Violation of the Tom Bane Act, California Civil Code § 52.1

"In order to state a claim under the Bane Act, '[a] plaintiff must show (1) intentional interference or attempted interference with a state or federal constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion.'" *Doe v. Johnson*, 2024 WL 4437817, at *4 (quoting *Allen v. City of Sacramento*, 234 Cal. App. 4th 41, 67 (2015)). In short: "The essence of a Bane Act claim is that the defendant . . . tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (2007).

3:25-cv-02471-GPC-DDL

Defendant argues that, to state a claim under the Bane Act, Plaintiff must allege that he is a member of a protected class, and that Defendant engaged in some "act of violence or intimidation by violence" beyond Doe 1's sexual assault of Plaintiff. ECF No. 11, at 10. Defendant is incorrect. *See Venegas v. Cnty. of Los Angeles*, 32 Cal. 4th 820, 842-43 (2004) (holding that a plaintiff bringing a Tom Bane Act claim need not allege that he is a member of a protected class); *Cornell v. City & Cnty. of San Francisco*, 17 Cal. App. 5th 766, 800-02 (2017), *as modified* (Nov. 17, 2017) (finding that, when a plaintiff pleads an intentional legal violation that includes coercion, threats, or intimidation, he need not plead some additional act of coercion or violence).

The language of the Bane Act requires only interference with a state or federal constitutional or legal right through "threats, intimidation, or coercion." Cal. Civ. Code § 52.1. Further, California courts have held that the required "threat, intimidation, and coercion," need not be independent from a properly pled, intentional legal violation. *See Cornell*, 17 Cal. App. 5th at 801-802. *See also Reese v. Cnty. of Sacramento*, 888 F.3d 1030, 1042 (9th Cir. 2018) ("[D]istrict courts have largely interpreted it to mean that section 52.1 does not require a showing of 'threats, intimidation and coercion' separate from an underlying constitutional violation."). For example, "the use of excessive force can be enough to satisfy the 'threat, intimidation or coercion' element of Section 52.1." *Cornell*, 17 Cal. App. 5th at 799. Thus, when a violation is properly pled, "the egregiousness required by Section 52.1 is tested by whether the circumstances indicate the [wrongdoer] had a specific intent to violate the [victim's] right." *Id.* at 801.

Plaintiff has alleged facts showing that Doe 1, in an exercise of his authority as a corrections officer at OMDC, intentionally sexually harassed and sexually assaulted Plaintiff while Plaintiff was a detainee in Doe 1's custody. ECF No. 1-2, ¶¶ 34-38. In doing so, Plaintiff alleges that Doe 1 violated Plaintiff's statutory right to be free from unlawful sexual conduct under California Penal Code § 289.6, as well as Plaintiff's rights to bodily autonomy and to be free from sexual violence. ECF No. 1-2, ¶¶ 3, 161. Such a

violation is so intentional and egregious as to satisfy the threat, intimidation, or coercion element of § 52.1, and Plaintiff need not plead some additional and separate threat, intimidation, or coercion. *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 990, 999 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) ("Plaintiffs met § 52.1 's requirement of 'threats, intimidation, or coercion' by proving Defendants acted knowingly and intentionally.").

Even if Plaintiff was required to allege threats, intimidation, or coercion beyond the sexual assault itself, his complaint does so. Plaintiff has alleged that he was "forced" to remove his clothes, ECF No. 1-2, ¶ 30; had a reasonable belief that he would be punished if he refused the officer's orders, *id.* ¶ 31; tried to leave the room but was grabbed by Doe 1, *id.* ¶ 38; and was "threatened and ordered not to say or do anything," *id.*

However, while these allegations are well-pled, they are not required. It is enough that Doe 1 had a specific intent to violate Plaintiffs' rights and did so by sexually assaulting Plaintiff. Accordingly, Plaintiff has sufficiently pled a claim under the Tom Bane Act, Cal. Civ. Code § 52.1.

## XII.   Intentional Infliction of Emotional Distress – Count X

Plaintiff attempts to state an intentional infliction of emotional distress claim against CoreCivic under a theory of direct liability and vicarious liability for Doe 1's actions. "To plead a cause of action for intentional infliction of emotional distress, a plaintiff must allege: (1) extreme and outrageous conduct by the defendant with the intent to cause, or reckless disregard for the probability of causing, emotional distress; (2) suffering of severe or extreme emotional distress by the plaintiff; and (3) the plaintiff's emotional distress is actually and proximately the result of defendant's outrageous conduct." *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, No. 09MD2087-BTM AJB, 2010 WL 2232151, at *2 (S.D. Cal. June 3, 2010) (quoting *Chang v. Lederman*, 172 Cal. App. 4th 67, 86 (2009)). "It is not enough that the conduct be intentional and outrageous. It must be conduct *directed at the plaintiff*, or occur in the presence of a plaintiff *of whom the defendant is aware.*" *Potter*

*v. Firestone Tire & Rubber Co.*, 6 Cal. 4th 965, 1002 (1993) (emphasis in original) (quoting *Christensen v. Superior Court*, 54 Cal. 3d 868, 903 (1991)). "The requirement that the defendant's conduct be directed primarily at the plaintiff is a factor which distinguishes intentional infliction of emotional distress from the negligent infliction of such injury." *Doe v. Johnson*, 2024 WL 4437817, at *5 (quoting *Christensen*, 54 Cal. 3d at 904).

Defendant CoreCivic does not argue that Plaintiff failed to allege an intentional infliction of emotional distress claim against Doe 1. Instead, it argues only that it cannot be held liable for Doe 1's intentional infliction of emotional distress. As discussed *supra*, this Court finds that Doe 1's outrageous conduct—sexually assaulting Plaintiff—"arose from an abuse of job-created authority" and was a "generally foreseeable consequence" of Doe 1's position. *Lisa M.*, 12 Cal. 4th at 302, 303 (citing *Mary M.* 54 Cal. 3d at 221). Thus, Plaintiff has sufficiently alleged vicarious liability as to Defendant CoreCivic for Doe 1's intentional infliction of emotional distress.

Plaintiff is not so successful in alleging a direct claim of intentional infliction of emotional distress against Defendant CoreCivic. To begin, while Plaintiff has adequately alleged negligent conduct attributable to CoreCivic, Plaintiff has not sufficiently pled outrageous or extreme conduct attributable to CoreCivic. Plaintiff has not alleged sufficient facts demonstrating that CoreCivic intentionally—rather than negligently—violated PREA or improperly supervised Doe 1. Additionally, Plaintiff does not allege any conduct on the part of CoreCivic that is directed primarily towards Plaintiff himself. Such direction is necessary to state a claim for intentional infliction of emotional distress under California law. *Potter*, 6 Cal. 4th at 1002. Thus, Plaintiff's direct intentional infliction of emotional distress claim against Defendant CoreCivic cannot withstand Defendant's motion to dismiss.

Accordingly, the Court denies Defendant's motion to dismiss Plaintiff's intentional infliction of emotional distress claim against Defendant CoreCivic to the extent the claim

3:25-cv-02471-GPC-DDL

relies on a theory of vicarious liability. To the extent the claim alleges that Defendant CoreCivic directly committed the tort of intentional infliction of emotional distress, the Court dismisses the claim with leave to amend.

### XIII. Punitive Damages

Defendant argues that Plaintiff has failed to allege sufficient facts supporting a prayer for punitive damages. ECF No. 8, at 28-29. Plaintiff counters that a Rule 12(b)(6) motion to dismiss is not the proper avenue through which to challenge a prayer for punitive damages. ECF No. 10, at 28 (citing *Sturm v. Rasmussen*, No. 18-CV-01689-W-BLM, 2019 WL 626167, at *3 (S.D. Cal. Feb. 14, 2019)).

The Ninth Circuit has not yet resolved whether a defendant can attack a prayer for punitive damages as inadequately pled under Rule 12(b)(6). However, this Court "agrees with what appears to be the majority of courts" that a district court may "dismiss punitive damages claims for lack of specificity." *Grimberg v. United Airlines, Inc.*, No. CV 22-8191-MWF (JCX), 2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023) (collecting cases). Thus, this Court finds that "allegations supporting a claim of punitive damages must be alleged with sufficient specificity to satisfy the *Iqbal/Twombly* standards[.]" *Id. But see Sturm*, 2019 WL 626167, at *3 ("Because a 12(b)(6) motion to dismiss challenges the legal sufficiency of the pleadings, not the appropriateness of the relief sought, a motion to dismiss is not the proper mechanism to challenge a prayer for punitive damages.").

However, in holding that a prayer for punitive damages may be dismissed as insufficiently pled, this Court does not deviate from the principle that "malice . . . and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). *See, e.g., Rees v. PNC Bank, N.A.*, 308 F.R.D. 266, 273-74 (N.D. Cal. 2015) ("Accordingly, 'in federal court, a plaintiff may include a "short and plain" prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent.'" (quoting *Clark v. Allstate Ins. Co.*, 106 F. Supp. 2d 1016, 1019 (S.D. Cal. 2000)); *Alejandro v. ST Micro Elecs., Inc*, 129 F. Supp. 3d 898, 917 (N.D. Cal. 2015) ("To satisfy the federal

pleading standard for punitive damages, a plaintiff may include a short and plain prayer for punitive damages that relies entirely on unsupported and conclusory averments of malice or fraudulent intent." (internal quotation marks and citations omitted)). *But see Kelley v. Corr. Corp. of Am.*, 750 F. Supp. 2d 1132, 1147 (E.D. Cal. 2010) (finding more than a conclusory assertion of malice, fraud, or oppression is needed to state a claim for punitive damages). Thus, the Court will consider Defendant's challenge to the sufficiency of Plaintiff's prayer for punitive damages while keeping in mind the pleading standards enshrined in Rule 9(b).

Under California law, "[p]unitive damages are awarded only where there is malice, oppression, or fraud." *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 167 (2000). Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." *Trejo v. Cnty. of Imperial*, No. 20-CV-1465-DDL, 2024 WL 5705563, at *3 (S.D. Cal. Jan. 23, 2024) (quoting Cal. Civ. Code § 3294). In California, an employer cannot be held liable for punitive damages based on the acts of an employee unless:

> the employer had advance knowledge of the unfitness of the employee and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice. With respect to a corporate employer, the advance knowledge and conscious disregard, authorization, ratification or act of oppression, fraud, or malice must be on the part of an officer, director, or managing agent of the corporation.

*Trejo*, 2024 WL 5705563, at *4 (quoting Cal. Civ. Code § 3294(b)). "Ratification is the '[c]onfirmation and acceptance of a previous act.'" *Cruz v. HomeBase*, 83 Cal. App. 4th 160, 168 (2000) (quoting Black's Law Dict., 1268 (7th ed.1999)).

In detailing Doe 1's alleged conduct, Plaintiff has sufficiently demonstrated that Doe 1 acted with malice, or with a "willful and conscious disregard of the rights or safety of

28

3:25-cv-02471-GPC-DDL

others." Cal. Civ. Code § 3294(c)(1). However, the question remains as to whether Plaintiff has sufficiently alleged that Defendant CoreCivic—through an officer, director, or managing agent of the corporation—either (1) had prior knowledge of Doe 1's unfitness, (2) authorized or ratified Doe 1's conduct, or (3) acted with malice, oppression, or fraud.

Here, Plaintiff has alleged that Defendant CoreCivic's "officers, directors and/or managing agents authorized and/or ratified [Doe 1's] conduct, justifying an award of punitive damages against Defendants." ECF No. 1-2, ¶¶ 134, 142, 174, 183. Plaintiff further alleges that after he was assaulted, Plaintiff reported the rape, ECF No. 1-2, ¶ 40, but "upon information and belief, CoreCivic did not do anything to prevent further incidents from occurring," *id.* ¶ 41, or "discipline the subject officer," *id.* ¶ 45.

Plaintiff's complaint sufficiently alleges that (1) Doe 1 acted with malice, (2) Defendant CoreCivic, through its officers, directors, or agents, ratified Doe 1's conduct, and (3) Plaintiff is entitled to punitive damages. Thus, the Court DENIES Defendant's motion to dismiss Plaintiff's prayers for punitive damages.

## CONCLUSION

For the reasons outlined, the Court GRANTS, in part, and DENIES, in part, Defendant CoreCivic's motion to dismiss. Specifically, Defendant CoreCivic's motion to dismiss is:

- GRANTED, without prejudice and with leave to amend, as to Plaintiff's Count II claim for negligent hiring.
- GRANTED, with prejudice and without leave to amend, as to Count IV, negligence per se;
- GRANTED, without prejudice, as to Count VII, sexual harassment;
- GRANTED, without prejudice, as to Count IX, gender violence;
- GRANTED, without prejudice and with leave to amend, as to Count X, intentional infliction of emotional distress, insofar as it relies on a theory of direct liability;
- DENIED as to Count I, negligent supervision;

- DENIED as to Plaintiff's Count II negligent supervision, training, and retention claims;

- DENIED as to Count V, sexual battery;

- DENIED as to Count VI, battery;

- DENIED as to Count VIII, violation of the Tom Bane Act;

- DENIED as to Count X, intentional infliction of emotional distress, insofar as it relies on a theory of vicarious liability;

- DENIED as to Plaintiff's prayers for punitive damages;

- DENIED as to Doe Defendants 2-30.

Should Plaintiff choose to file a first amended complaint, he may do so within 20 days of this Order.

IT IS SO ORDERED.

Dated:  January 27, 2026

Hon. Gonzalo P. Curiel
United States District Judge

30